STATE OF MAINE
*vs.*
JULIEN TALBOT

Somerset.    Opinion, March 11, 1964.

104

*Clinton B. Townsend, County Attorney*, for State.

*William D. Hathaway*, for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

MARDEN, J.   On exceptions to the overruling of a demurrer to an indictment, the original of which is, by agreement, before us.

The charging portion of the indictment is composed as follows:

"The jurors for the state aforesaid, upon their oath present, that Julien Talbot * * * with intent to defraud, feloniously did utter and publish as true to one Ernest J. Quint, Sr., a certain altered and forged written instrument purporting to be a contract, a verbatim copy of which is appended to this indictment, he, the said Julien Talbot then and there well knowing the same to be altered and forged, against the peace of the State and contrary to the statute in such case made and provided",

at which point were stapled two photostatically reproduced sheets representing the instrument alleged to have been altered and forged, following which appeared "A true bill, signed Harold V. Tewksbury, Foreman and signed Clinton B. Townsend, County Attorney."   A portion of the instrument as reproduced is of questionable legibility, to some eyes totally unreadable and to others readable upon careful study.

This instrument is in the form of a contract between American Modernizing Co. therein referred to as the "Contractor" and Ernest James Quint, Sr., referred to as "Owner," the gist of which is that the owner employs the contractor to make certain home improvements therein set forth for a job cost with a provision that "this contract shall not be binding upon the 'Contractor' until accepted by the 'contractor' " with a space at the end of the instrument reading "Accepted: American Modernizing Co. _____ Contractor." Although this acceptance clause is unsigned, the document does not limit "acceptance" to the signing of the prepared clause. Respondent's demurrer to this indictment was overruled and now in support of his exceptions urges that:

(1) That the indictment is insufficient because of the absence of an allegation that the instrument allegedly uttered was "falsely" altered and forged.

(2) That the physical composition of the indictment consisting of (a) the use of a photostatic copy of the reference instrument and (b) its affixation to the sheet bearing the charge renders the indictment invalid, and (c) in any event the charge must be legible, in absence of which the indictment is insufficient.

(3) That, in this case, extrinsic facts must be pleaded representing how the instrument could prejudice the rights of another, and

(4) That the pleading must set forth both the alteration charged and its materiality.

DEMURRER

The insufficiency which the respondent alleges may be reached by demurrer. " * * * (A) demurrer puts the legality of the whole of the proceedings in issue, as far as they judicially appear; for the court is bound to examine

the whole record, to see whether they are warranted in giving judgment upon it; * * * ." Bishop on Criminal Procedure 3rd Ed. § 741, *State* v. *Mahoney*, 115 Me. 251, 252, 98 A. 750 and *State* v. *Dunn*, 136 Me. 299, 301, 8 A. (2nd) 594. Demurrant contends "that the indictment is bad for not stating the requirements in a legal way" *State* v. *Kerr*, 117 Me. 254, 258, 103 A. 585.

## SUFFICIENCY OF ALLEGATION

The sufficiency of allegation must be tested upon a presumption that respondent is innocent and has no knowledge of the facts charged against him, *State* v. *Farnham*, 119 Me. 541, 544, 112 A. 258, and must have that degree of certainty and precision which (a) will fully inform him of the special character of the charge against which he is called upon to defend, and (b) will enable the court to determine whether the facts alleged are sufficient in law to constitute an offense so that the record may stand as a protection against further jeopardy. *Kerr, supra,* at 257.

The respondent is accused of feloniously uttering and publishing "a certain altered and forged written instrument" in violation of Section 1 of Chapter 133, R. S., which provides "whoever, with intent to defraud, falsely makes, alters, forges or counterfeits any * * * written instrument of another, or purporting to be such, by which any pecuniary demand or obligation * * * is or purports to be created, * * * shall be punished * * * ."

Forgery as a crime, and by our statutory definition, includes the acts of falsely making and falsely altering with intent to defraud. The *acts* of making and altering are not the same. The act of forging, to forge, separate from its legal significance, is "to make or imitate falsely; to produce or devise, to fabricate," Webster's New International Dictionary 2nd Ed.; "to fashion, make, produce," Webster's Third New International Dictionary; "to make in the

likeness of something else," "to counterfeit"; *State* v. *Mc-Kenzie*, 42 Me. 392, 394; *DeRose* v. *The People*, 171 P. 359, 360 [1, 2] (Colo. 1918); *Carter* v. *State*, 116 S. W. (2nd) 371, 376 [6, 7] (Texas 1938); *Marteney* v. *United States*, 216 F. (2nd) 760, 763 [4] (Ct. of Appeals Tenth Cir. 1954). The act of altering, to alter, is the changing of something already made, produced, or fabricated. As Webster's Third New International Dictionary puts it "to cause to become different in some particular characteristic without changing into something else."

A person charged with the offense of forgery is entitled to know whether his conduct, which the law criticizes, is that of making or altering. Altering, as such, of an instrument is not necessarily a violation of law. An act of altering may be made in good faith, may be made to correct an error, or to conform the instrument to the truth. This is recognized in 23 Am. Jur., Forgery, § 16 *et seq.* and in *State* v. *Sotak*, 131 S. E. 706, 708 [2] (W. Va. 1926); *People* v. *Reichert*, 191 N. E. 220 (Ill. 1934) and Annot. 93 A. L. R. 864. The nature of the altering to bring it within the definition of forgery must be false altering, *State* v. *Flye*, 26 Me. 312, 320, also Whitehouse and Hill, Directions and Forms for Criminal Procedure for the State of Maine, p. 103, and the word "falsely" in the reference statute must be read as modifying "alters." The felonious utterance with intent to defraud of an altered instrument may be some offense, but it is not forgery. Unless the indictment necessarily charges the respondent with the violation of the statute, the indictment is insufficient. *State* v. *Maine State Fair Association*, 148 Me. 486, 490, 96 A. (2nd) 229. Upon this point an exception is sustained.

Having determined that the charge as expressed in the indictment is insufficient we do not have to reach the other points raised, but the practical importance of considering the use of currently available methods of reproducing

printed material, the applicability of such methods to criminal pleadings and, if use of such reproductive process is found to be valid, how the reproduced copy may be safely incorporated without offending long established principles of criminal pleading, and the necessity of pleading extrinsic facts in the present case as it may affect future criminal pleading, prompts us to explore these areas.

## REPRODUCTION

It was said in *State* v. *Bonney*, 34 Me. 383 that in an indictment for forgery, the instrument alleged to be forged should be set forth in the indictment "according to its tenor." By this mode "an exact copy" is intended (p. 384) and traditionally the instruments involved have been "copied" into the indictment. The realities of attempting to thus reproduce a variety of instruments, first by hand copying and later by the typewriter, have excused the writer from "copying," in the case of a bank bill or note, "its vignettes, mottoes and devices." Wharton's Criminal Law, 12th Ed., §939. This in itself illustrates that the "exact copy" contemplated by the law, has been practically impossible. It is fair to say that the same exception would apply to documents with advertising symbols or characters not material to the charge. *State* v. *Flye*, 26 Me. 312, 317. In cases of an allegedly forged signature, even though the signature as appearing on a typewritten copy has never informed the accused of the handwriting against which he might have to defend, an indictment in this form has never been deemed insufficient.

In these respects the present availability of machine copying methods, when properly applied, can reproduce a more exact copy than has ever been heretofore available. It must follow that the use of such reproductive processes are acceptable.

The trustworthiness of such reproduction has been recognized in Maine since 1935 in what are now Sections 144-146,

inclusive, of Chapter 113, R. S., and the Uniform Photographic Copies of Business and Public Records as Evidence Act adopted by 1961, in some instances with modifications, by the federal system and thirty-three states.

## INCORPORATION

The manner in which a reproduced instrument may be safely made a part of the indictment poses another problem. We cannot say arbitrarily that the affixation to the paper on which the charge is written is invalid, for in lengthy indictments it has long been a custom to bind several sheets together as one instrument and in that sense the sheets have been affixed to one another. The basis of concern is that by improper affixation, the reproduced instrument or a portion may become detached from the indictment and lost before the case is recorded, and leave the respondent exposed to double jeopardy by subsequently being unable to show that he has been once jeopardized. With this risk in mind, we can say only that an affixation of the impleaded instrument to the charge sheet in a manner to reduce its detachment to a minimum would be by us considered valid. In the instant case the reproduced instrument was attached to the charge sheet immediately following the charge and before the certification by the signature of the foreman of the grand jury, and the signature of the county attorney. The law requires that the instrument be *within* the indictment, and we have long incorporated in legal documents separate papers "to which reference is hereby made" or as "attached hereto and made a part hereof." 42 C. J. S. "Incorporation" Page 544; in Equity Pleading, Whitehouse Equity Practice, § 201; 17A C. J. S., Contracts, § 299; 12 Am. Jur., Contracts, § 245; 26 C. J. S., Deeds, § 101, Wills, *Newton* v. *Seaman's Friend Society,* 130 Mass. 91, and in a criminal indictment *Whitfield* v. *State,* 256 P. 68 [1, 2] (Okla. 1927).

If the subject instrument is verbally incorporated, by appropriate language, and proposed to be physically incorporated, it should be attached to the charge sheet at the point of proposed incorporation and thereafter followed by the remainder of the charge and the requisite certification and signatures.

To fully inform the respondent of the charge which he is called upon to defend requires a legible charge sheet. An illegible charge sheet is exposed to abatement.

## PLEADING EXTRINSIC FACTS

Demurrant urges also that inasmuch as the instrument purported to be a contract between the "owner" and "contractor" was, by its terms, not binding upon "contractor" until accepted by the contractor and the space for such acceptance was not executed, there was no contract, that no one was or could be prejudiced by any terms of the instrument, false or otherwise, and, therefore, the offense of forgery was not pleaded; that to found a charge of forgery upon the reference instrument required the declaration of other facts to reveal how someone's rights could be or were prejudiced, and if falsely altering be the basis of the charge, that the genuine instrument should be pleaded together with the alleged alteration.

These contentions have limited applicability. The charge is not based upon an act of forging or falsely altering, but knowingly uttering (offering as good, Wharton's Criminal Law, 12th Ed., § 910) a forged instrument with intent to defraud. The elements are (a) a forged or falsely altered instrument within a category covered by the statute, (b) known by the utterer to be forged or falsely altered, and (c) utterance of the same with intent to defraud, 23 Am. Jur., Forgery, § 5; *Clark* v. *State,* 114 So. (2nd) 197, 200 [2] (Fla. 1959) on a statute materially the same as ours.

The extent to which the contentions recited above are appropriately examined in the present case goes only to the question of whether the document here allegedly forged or falsely altered is an instrument falling within our statute, whereon a charge of uttering may be founded. Is it a written instrument of another or purporting to be such by which any pecuniary obligation is or purports to be created? The terms of the instrument do not require that acceptance by the Modernizing Company be entered in the space provided on the document. The Modernizing Company may have accepted the proposed contract orally or by other writing, in which event pecuniary obligations are created on the part of the contracting parties. If proof discloses no acceptance by the Modernizing Company, we are left with the question of whether this instrument is one, or purports to be one, by which any pecuniary obligation "purports" to be created. In such event the document may validly be considered an offer on the part of the person represented by the other signatory to the paper to become bound to the terms of the contract which the paper represents, which offer would remain in effect until terminated by revocation, death, rejection or by lapse of time. Such offer until terminated purports (intends, is designed, means, if genuine) to create a contract and establish a pecuniary obligation. The reference instrument is within the meaning of our statute and an instrument upon which a charge of uttering may be based.

To constitute the offense of uttering, it is in no case requisite to show that the accused had been implicated in the (act of) forgery. Wharton, *supra*, § 919; *Levy* v. *State*, 170 A. (2nd) 216, 218 [2-6] (Md. 1961) certiorari denied 82 S. Ct. 113.

The offenses of forging and uttering a forged instrument are distinct. *State* v. *Blodgett*, 121 N. W. 685, 688 (Iowa 1909) ; *Commonwealth* v. *Miller*, 115 S. W. 234, 236 (Ky.

1909). The fact that the indictment does not allege, in detail, the manner of forgery is not fatal, for the means adopted to produce the instrument are not material. *Hazen v. Mayo*, 90 So. (2nd) 123, 124 [1, 2] (Fla. 1956). Criticisms 3 and 4 in support of respondent's exceptions, except as discussed above, have no application.

*Exceptions sustained*

*Demurrer sustained.*

*Indictment quashed.*